**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL ASSOCIATION OF TICKETING PROFESSIONALS *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Case No. 26-cv-________ |

**DECLARATION OF KARL ROES ON BEHALF OF STAGE FRONT TICKETS, INC. IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to 28 U.S.C. § 1746, I, Karl Roes, declare as follows:

**Background and Personal Knowledge**

1. I am the founder and Chief Executive Officer of Stage Front Tickets, Inc. ("Stage Front"). I founded Stage Front in 1984 and have led the company since that time.

2. I am over the age of eighteen and competent to make this declaration. I have personal knowledge of the facts set forth in this declaration except where stated otherwise. If called as a witness, I could and would testify competently to these facts.

3. Through my work, I am familiar with the resale market, including how resellers operate and reach consumers through marketplaces, and with the District of Columbia's Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2026 (the "Act").

4. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction to enjoin enforcement of the Act's resale price cap, which provides that a reseller "shall not sell or offer to sell a ticket that exceeds the total price of the initial ticket, including all fees

and taxes in connection with the initial ticket, plus up to 10%" of that total price (the "Price Cap"). D.C. Code § 28-5506(b). I understand that the Price Cap is scheduled to apply beginning on January 1, 2027.

**Stage Front's Role in the Ticket Resale Market**

5. Stage Front is a corporation organized under the laws of Florida with offices in Maryland. Stage Front does not maintain an office in the District of Columbia. Stage Front was a founding member of the National Association of Ticket Brokers and has remained a member since, including after that association became known as the National Association of Ticketing Professionals ("NATP").

6. Stage Front participates in the ticket resale market in two distinct ways. First, it sells tickets that it owns. Stage Front lists those tickets on regulated nationwide marketplaces that reach potential buyers across the country. Second, Stage Front operates as a consignment agent. In that role, Stage Front helps other resellers reach consumers throughout the United States through the same marketplaces. Stage Front does not own the tickets for which it serves as a consignment agent, and it cannot verify what the owner of a ticket originally paid to acquire that ticket. When a ticket that Stage Front has listed on a reseller's behalf is sold, Stage Front collects a fee for its services and remits the remaining proceeds to the reseller. Stage Front's consignment revenue therefore depends on the volume and value of the resale transactions it facilitates.

7. The resellers Stage Front works with are based in states throughout the country, as are the consumers they reach. Given the national scope of its operations and the marketplaces with which it connects resellers, Stage Front regularly facilitates sales of tickets for events located in the District, as well as sales of tickets for events taking place elsewhere to buyers located in the District.

**The Price Cap Would Injure Stage Front as a Reseller**

8. Stage Front sells tickets that it owns in transactions that would be subject to the Price Cap at prices above what the Price Cap allows. If the Price Cap did not exist, Stage Front would continue acquiring and selling such tickets at market prices after January 1, 2027.

9. Based on my experience, Stage Front's resale business would probably operate at a loss on transactions covered by the Price Cap because the limited upside permissible under the Act is likely not enough to consistently cover the costs of doing business and offset losses on other resales. As a result, I expect that Stage Front would not buy and resell tickets whose resale would trigger, or arguably trigger, the Price Cap.

**The Price Cap Would Disrupt Stage Front's Consignment Business**

10. In my experience, the resellers who use Stage Front's consignment services depend on the ability to sell some tickets above 110% of the initial ticket price because they must offset both the costs of doing business and the losses on tickets that sell at or below acquisition cost. If the Price Cap applies, I expect that many of these resellers will stop consigning tickets for transactions covered by—or arguably covered by—the Price Cap because those transactions will no longer make economic sense for them.

11. The result would be a direct loss to Stage Front. Each ticket that a reseller no longer consigns with Stage Front is a transaction on which Stage Front does not earn a fee. And even where a ticket that triggers the Price Cap is sold, the Price Cap would reduce the sale price from which Stage Front's fee is drawn.

12. Those harms are already beginning. Tickets for many upcoming events are currently on sale, and resellers are deciding now whether to consign tickets for those events. Once a consignment opportunity for an event passes, it cannot be recaptured.

**Harm to the Broader Ticket Resale Market**

13. By connecting resellers with marketplaces and buyers, Stage Front helps make tickets available to fans who could not obtain them from the primary ticketer. Stage Front also helps fans seeking a particular kind of ticket—such as a front-row seat to their favorite artist—even if the primary ticketer no longer has those tickets available. If the Price Cap drives resellers and consignors away from covered transactions, fewer tickets will be listed, buyers will have fewer options, and fans will become more dependent on the primary ticketer. I also believe that some resale activity is likely to move away from established marketplaces toward unregulated channels that increase the risk of fraud.

**Need for Preliminary Relief**

14. Because resellers are making purchase and consignment decisions now for upcoming events for which resale transactions will likely occur after January 1, 2027, Stage Front is already at risk of losing business because of the Price Cap. A preliminary injunction is necessary to allow Stage Front to continue serving the resellers and buyers who rely on it, and to avoid economic harm that cannot be recovered.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 15, 2026, in Lantana, Florida.

/s/ Karl Roes
Karl Roes
Founder and Chief Executive Officer
Stage Front Tickets, Inc.