# Exhibit B

**COUNCIL OF THE DISTRICT OF COLUMBIA**
**THE JOHN A. WILSON BUILDING**
**1350 PENNSYLVANIA AVENUE, NW, SUITE 110**
**WASHINGTON, DC 20004**

**Charles Allen**
Councilmember, Ward 6
Chair, Committee on Transportation and the Environment

**Committee Member**
Business and Economic Development
Health
Judiciary and Public Safety

April 9, 2025

Nyasha Howard
Secretary to the Council
Council of the District of Columbia
1350 Pennsylvania Avenue, NW
Washington, D.C. 20004

Dear Secretary Howard:

Today, I am introducing the ***"Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025"***, along with Councilmembers Brianne K. Nadeau, Kenyan R. McDuffie, Matthew Frumin, Christina Henderson, Janeese Lewis George, Robert C. White, Jr., and Zachary Parker. Please find enclosed a signed copy of the legislation.

The District is home to world-class arts and live entertainment venues. Unfortunately, the experience of buying a ticket to see an artist or musician at a concert here in the District is unfair, deceptive, and frustrating for concertgoers. Once a show is announced and tickets are released, scalpers, using bots and other technology, will typically flood the venue's ticketing platform and buy up most of the tickets to immediately resell them on secondary ticketing platforms like Stubhub, Vivid Seats, and SeatGeek, at an egregiously higher price. As a result, not only are concertgoers fleeced and price gouged, but they are denied a fair price and a fair opportunity to get initial tickets at face value. The higher prices that concertgoers pay for a ticket on the secondary market never go to the artist or venue, and instead exclusively benefit the scalper. Additionally, when a concertgoer buys a ticket on the secondary market, the exact seat number or section of the venue is typically not disclosed until the ticket has been transferred. A ticket for the same or similar seat can also have its price vary dramatically across different platforms.

Another opaque practice used by scalpers that harms concertgoers is the offer of "speculative tickets" – i.e., tickets that are not yet in their physical possession. For example, on March 28, 2025, the Sex Pistols announced a show in the District this coming September. On the very same day, the secondary market was offering $335 tickets for the show, even though tickets had not been released. When tickets are released, the initial price will be $60. Not only is this practice deceptive, as scalpers are offering to sell something that they do not actually have, it denies musicians the opportunity to set prices for their own shows.

The RESALE Amendment Act of 2025 will protect artists, venues, and consumers in the District from unfair and deceptive practices in the live event ticket market by:

- Capping the price of tickets sold on a secondary ticket platform at the total price of the initial ticket plus up to 10% of the total price of the initial ticket;
- Banning the sale of "speculative tickets";
- Requiring a reseller that sells or offers to sell 50 or more tickets a year to register annually with the Department of Licensing and Consumer Protection and to require that registered resellers provide certain information to the Department and maintain a surety bond of no less than $10,000;
- Requiring "all-in" pricing and clarifying the existing Consumer Protection Procedures Act obligation with language specifying that ticket issuers, resellers, and secondary ticket exchanges must clearly and conspicuously disclose upfront certain information regarding ticket pricing;
- Laying out when refunds must be provided to consumers;
- Prohibiting a ticket issuer from restricting the transferability of a ticket unless the terms and conditions on transferability are clearly disclosed to the consumer prior to purchase;
- Allowing ticket issuers to maintain and enforce policies and conditions or requirements for ticket purchase with respect to conduct, behavior, public health and safety, or age at the venue or event, and establish limits on the amount of tickets that can be purchased;
- Requiring a ticket issuer or secondary ticket platform to maintain reasonable technology to prevent any machine, device, computer program, or computer software, with or without human assistance, from bypassing security measures or access control systems designed to limit the number of tickets that can be purchased by a person on a marketplace for initial purchase or secondary ticket exchange;
- Imposing responsibilities on secondary ticket exchanges to ensure fair practices in the secondary market;
- Requiring the Mayor to issue rules to implement provisions governing the registration of resellers; and
- Providing for civil penalties of $5,000 for the first violation and $10,000 for the second and subsequent violations.

This legislation is supported by I.M.P., which owns the 9:30 Club, The Anthem, The Atlantis, and manages the Lincoln Theatre, 30 local venues and music organizations, including the National Independent Venue Association, and the Office of the Attorney General.

Please feel free to reach out to me or my Legislative Director, Antonio Nunes, with any questions or for additional information.

Sincerely,



Councilmember Charles Allen, Ward 6
Chairperson, Committee on Transportation & the Environment

Councilmember Brianne K. Nadeau

Councilmember Charles Allen

Councilmember Kenyan R. McDuffie

Councilmember Matthew Frumin

Councilmember Christina Henderson

Councilmember Janeese Lewis George

Councilmember Robert C. White, Jr.

Councilmember Zachary Parker

A BILL

________

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

_________________

To amend Title 28 of the District of Columbia Official Code to protect artists, venues, and consumers in the District from unfair and deceptive practices in live event ticket purchases by clarifying a ticket issuer, reseller, or secondary ticket exchange's existing obligation under the Consumer Protection Procedures Act, like in all industries, to clearly and conspicuously disclose upfront certain information regarding ticket pricing, to prescribe procedures governing the provision of refunds, to prohibit the sale of speculative tickets, to prohibit a ticket issuer from restricting the transferability of a ticket unless the terms and conditions on transferability are clearly disclosed to the consumer prior to purchase, to permit ticket issuers to maintain and enforce policies and conditions or requirements for ticket purchase with respect to conduct, behavior, public health and safety, or age at the venue or event, and establish limits on the amount of tickets that can be purchased, to require a ticket issuer or secondary ticket exchange to maintain reasonable technology to prevent any machine, device, computer program, or computer software, with or without human assistance, from bypassing security measures or access control systems designed to limit the number of tickets that can be purchased by a person on a marketplace for initial purchase or secondary ticket exchange, to require a reseller that sells or offers to sell 50 or more tickets a year to register annually with the Department of Licensing and Consumer Protection and to require that registered resellers provide certain information to the Department and maintain a surety bond of no less than $10,000, to impose responsibilities on secondary ticket exchanges, to prohibit the price of

tickets sold on a secondary ticket exchange from exceeding the total price of the initial ticket plus up to 10% of the total price of the initial ticket, to require the Mayor to issue rules to implement provisions governing the registration of resellers, and to provide for civil penalties of $5,000 for the first violation and $10,000 for the second and subsequent violations of this chapter.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025".

Sec. 2. Title 28 of the District of Columbia Official Code is amended as follows:

(a) The table of contents is amended by adding a new chapter designation to read as follows:

"55. Sale and Resale of Event Tickets.".

(b) A new Chapter 55 is added to read as follows:

"CHAPTER 55. SALE AND RESALE OF EVENT TICKETS.

"28-5501. Definitions.

"28-5502. Ticket disclosure and refund requirements.

"28-5503. Prohibition on the sale or offer to sell of speculative tickets.

"28-5504. Transferability of tickets.

"28-5505. Requirement of reasonable technology for a ticket issuer and secondary ticket exchange.

"28-5506. Reseller registration and reporting requirements.

"28-5507. Secondary ticket exchange responsibilities.

"28-5508. Price cap for tickets on secondary ticket exchange.

"28-5509. Rules.

"28-5510. Penalties and enforcement.

"§ 28-5501. Definitions.

"For the purposes of this chapter, the term:

"(1) "Department" means the Department of Licensing and Consumer Protection.

"(2) "Resale" means the second or subsequent sale of a ticket by any method, including in-person transactions, telephone, mail, e-mail, facsimile, or electronic means through a website or mobile application.

"(3) "Reseller" means a person engaged in the resale of tickets.

"(4) "Secondary ticket exchange" means an electronic marketplace that enables a person to sell, purchase, and resell tickets.

"(5) "Speculative ticket" means a ticket that is not in the actual or constructive possession of a reseller at the time of listing, sale, or advertisement, including tickets that are not owned by the reseller or not under contract to be transferred to the reseller.

"(6) "Ticket" means any form of physical, electronic, or other evidence that grants the possessor of the evidence license to enter a place of entertainment for one or more events at a specified date and time; provided, that the event is not organized by a professional or intercollegiate sports team located in the District or professional athletic association with an event located in the District.

"(7) "Ticket issuer" means a person or their agent who issues tickets for initial sale, including musicians, venues, promoters, theater companies, and marketplaces for initial purchases.

"§ 28-5502. Ticket disclosure and refund requirements.

"(a) The listing for a ticket and each step of a transaction to purchase a ticket shall clearly and conspicuously disclose:

"(1) The total price of the ticket, including all fees and taxes other than shipping costs that are not determinable at a step in the transaction;

"(2) An itemized listing of all charges that comprise the total price of the ticket, including all fees and taxes; and

"(3) The seat number, zone, and section, to the extent applicable to the seat and venue.

"(b)(1) The total price of a ticket disclosed pursuant to subsection (a) of this section may be increased in a noninitial step of a transaction by the amount of reasonable shipping costs for physically delivered tickets.

"(2) The shipping costs allowed under paragraph (1) of this subsection may vary with the consumer's location relative to the shipment's location of origin and the delivery method selected by the consumer.

"(3) The total price of the ticket, including all fees, taxes, and shipping costs, shall be clearly and conspicuously disclosed prior to final purchase of the ticket.

"(c)(1) A ticket issuer, secondary ticket exchange, or reseller directly engaged in a transaction with a consumer shall provide a full refund, including all fees and taxes, if:

"(A) The ticket is counterfeit;

"(B) The event is canceled; or

"(C) The ticket does not conform to the description provided at the time of purchase.

"(2) Refunds shall be issued within 10 days of the event's cancellation or discovery of non-conformance.

"§ 28-5503. Prohibition on the sale or offer to sell of speculative tickets.

"A reseller or a secondary ticket exchange shall not sell or offer to sell speculative tickets, as defined in § 28-5501(4).

"§ 28-5504. Transferability of tickets.

"(a) A ticket issuer shall not restrict the transferability of a ticket sold unless the terms and conditions on transferability are clearly and conspicuously disclosed to the consumer prior to purchase and the consumer acknowledges receipt of such disclosure prior to purchase.

"(b) A ticket issuer may, subject to applicable District or federal law:

"(1) Maintain and enforce policies and conditions or requirements for ticket purchase with respect to conduct, behavior, public health and safety, or age at the venue or event; and

"(2) Establish limits on the quantity of tickets that may be purchased.

"§ 28-5505. Requirement of reasonable technology for a ticket issuer and secondary ticket exchange.

"A ticket issuer, to the extent applicable, and secondary ticket exchange shall implement and maintain reasonable technology to prevent any machine, device, computer program, or computer software, with or without human assistance, from bypassing security measures or access control systems designed to limit the number of tickets that can be purchased by a person on a primary or secondary ticket exchange.

"§ 28-5506. Reseller registration and reporting requirements.

"(a)(1) A reseller that sells or offers to sell 50 or more tickets in a year shall register annually with the Department before conducting any ticket resale activity.

"(2) If a reseller lists a single ticket across multiple platforms, the total number of listings for the ticket shall count toward the registration threshold provided in paragraph (1) of this subsection.

"(b) A reseller subject to the requirement imposed in subsection (a) of this section shall provide the following information to the Department at the time of registration:

"(1) Full legal name and any aliases or usernames used in the resale of tickets;

"(2) Contact information, including a physical street address, email address, and phone number;

"(3) Social security number and employer identification number ("EIN") and contact information for any employer, if applicable;

"(4) All associated entities involved in the resale of tickets; and

"(5) Any additional information required by the Department.

"(c) All entities under common ownership or control of a person shall be considered one reseller for the purposes of the registration requirements imposed under this section.

"(d) A registered reseller shall submit a report every 6 months to the Department containing:

"(1) The total number of tickets sold by the reseller;

"(2) The original purchase price of each ticket purchased by the reseller; and

"(3) The final resale price of each ticket sold by the reseller.

"(e)(1) A registered reseller shall maintain a surety bond of no less than $10,000 to ensure compensation to consumers in cases where the reseller fails to deliver purchased tickets or engages in fraudulent activities.

"(2) The surety bond shall cover compensation for lost funds by the consumer, including travel expenses incurred by the consumer if the reseller fails to deliver the purchased tickets.

"(3) The Department may adjust the surety bond amount for a registered reseller based on the reseller's sales volume and consumer complaint history.

"(4) A registered reseller shall submit evidence of the surety bond to a secondary ticket exchange prior to listing any ticket for resale.

"(f) The Department may revoke the registration of any registered reseller found to be in violation of this chapter for a period of at least 1 year and not more than 5 years.

"(g)(1) The Department shall maintain a list of registered resellers and make the list available to the public via the Department's website.

"(2) The list required pursuant to paragraph (1) of this subsection shall be updated at least once every 30 days and include information on any violations of this chapter within the past 5 years.

"(3) The Department shall not publicly disclose information provided by a registered reseller pursuant to subsection (b)(3) of this section.

"§ 28-5507. Secondary ticket exchange responsibilities.

"(a) A secondary ticket exchange shall maintain records of all registered resellers in the District using its platform and verify that each reseller meets the registration and bonding requirements laid out in § 28-5506.

"(b) A secondary ticket exchange shall report any unregistered or non-compliant resellers selling or offering to sell tickets to an event being held in the District to the Department.

"(c) A secondary ticket exchange shall:

"(1) Be responsible for maintaining records of ticket sales on its platform, including the number tickets sold and resale prices; and

"(2) Submit a report to the Department every 6 months containing:

"(A) The total number of tickets sold by a registered reseller on its platform;

"(B) The original purchase price of each ticket purchased by a registered reseller; and

"(C) The final resale price of each ticket sold by a registered reseller.

"§ 28-5508. Price cap for tickets on secondary ticket exchange.

"(a) A reseller or secondary ticket exchange shall not sell or offer to sell a ticket that exceeds the total price of the initial ticket, including all fees and taxes in connection with the initial ticket, plus up to 10% of the total price of the initial ticket.

"(b) A secondary ticket exchange may charge a fee for the service of providing a marketplace for the resale of a ticket; provided, that the fee shall not exceed 10% of the total price of the initial ticket.

"§ 28-5509. Rules.

"The Mayor, pursuant to Title I of the District of Columbia Administrative Procedure Act, approved October 21, 1968 (82 Stat. 1204; D.C. Official Code § 2-501 *et seq.*), shall issue rules to implement § 28-5506.

"§ 28-5510. Penalties and enforcement.

"(a)(1) A reseller or secondary ticket exchange that violates § 28-5503 or § 28-5508 shall be assessed a civil penalty of:

"(A) $5,000 per ticket for the first violation; and

"(B) $10,000 per ticket for the second and any subsequent violations.

"(2) Any person, where applicable, who violates §§ 28-5502, 28-5504, 28-5505, 28-5506, 28-5507, shall be assessed a civil penalty of:

"(A) $5,000 for the first violation; and

"(B) $10,000 for the second and any subsequent violations.

"(b) The civil penalty imposed pursuant to subsection (a) of this section shall be in addition to the remedies available to the Attorney General pursuant to § 28-3909.".

Sec. 3. Fiscal impact statement.

The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 4a of the General Legislative Procedures Act of 1975, approved October 16, 2006 (120 Stat. 2038; D.C. Official Code § 1-301.47a).

Sec. 4. Effective date.

This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto), a 30-day period of congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)).