# Exhibit J

**COUNCIL OF THE DISTRICT OF COLUMBIA**
**OFFICE OF COUNCILMEMBER BROOKE PINTO, WARD 2**

**MEMORANDUM**

---

**TO:** Chairman Phil Mendelson
**FROM:** Councilmember Brooke Pinto BE Pinto
**RE:** Notice of Intent to Move Amendment at the July 14, 2026, Additional Legislative Meeting
**DATE:** July 13, 2026

---

This memorandum serves as notice that I intent to move an amendment to B26-0224, the Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025 at the July 14, 2026, Additional Legislative Meeting:

- **Amendment #1**

This amendment strikes the provision allowing the Mayor to regulate ticket fees in the primary market. We must ensure we have a competitive market to attract performers and provide great cultural opportunities for residents. Local venues have shared that these fees are not incidental – the fees are part of the core business model artists and promoters rely on when deciding where to book events. Many venues make contracts with their ticketing platforms that are about three years long, allowing venues to get an advance of the money that will be made in order to cover venue maintenance costs. These provisions currently in the bill would introduce uncertain mayoral rulings that would make it much more difficult for venues to finalize such contracts and receive the money needed to stay open.

The engrossed bill gives the Mayor broad, discretionary authority to regulate "maximum fees" of the pricing structure for initial ticket sales. Because these fees could be changed at any time through rulemaking, the primary ticket market in the District would operate under a shifting and unpredictable regulatory environment. Touring artists, venues, and promoters rely on stable fee structures when planning shows, negotiating deals, and setting ticket prices. If those underlying costs can fluctuate based on future executive action, it becomes significantly harder to commit to booking events in the District.

No other state or city in the country imposes this kind of open-ended fee-setting authority on the primary ticket market. By standing alone in this approach, the District risks making itself a less predictable place to book shows, leading artists and promoters to choose nearby jurisdictions with consistent, established rules. That would not reduce costs for fans — it would reduce the number of live events available in Washington, DC.

Removing subsection (b) eliminates that uncertainty. It ensures DC's regulatory environment is consistent with every other major market and preserves the city's competitiveness in attracting artists, tours, and promoters.

A copy of the measure is attached. If you have any questions, please contact Esther Bundens, Senior Legislative Assistant, at ebundens@dccouncil.gov.

Councilmember Brooke Pinto

**AN AMENDMENT**

**IN THE COUNCIL OF THE DISTRICT OF COLUMBIA**

**DATE:** July 13, 2026

**OFFERED BY:** Councilmember Brooke Pinto

**TO:** B26-0224 the "Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2025"

**VERSION:**
___ Introduced
___ Committee Report
___ Committee Print
___ First Reading
_X_ Engrossed
___ Enrolled
___ Amendment in the Nature of Substitute

**Amendment:**

- The amended section 28-5507(b) within section 2(b) (page 8, lines 155-157) is repealed.

**Rationale:**

This amendment strikes the provision allowing the Mayor to regulate ticket fees in the primary market. We must ensure we have a competitive market to attract performers and provide great cultural opportunities for residents. Local venues have shared that these fees are not incidental – the fees are part of the core business model artists and promoters rely on when deciding where to book events. Many venues make contracts with their ticketing platforms that are about three years long, allowing venues to get an advance of the money that will be made in order to cover venue maintenance costs. These provisions currently in the bill would introduce uncertain mayoral rulings that would make it much more difficult for venues to finalize such contracts and receive the money needed to stay open.

The engrossed bill gives the Mayor broad, discretionary authority to regulate "maximum fees" of the pricing structure for initial ticket sales. Because these fees could be changed at any time through rulemaking, the primary ticket market in the District would operate under a shifting and unpredictable regulatory environment. Touring artists, venues, and promoters rely on stable fee structures when planning shows, negotiating deals, and setting ticket prices. If those underlying costs can fluctuate based on future executive action, it becomes significantly harder to commit to booking events in the District.

No other state or city in the country imposes this kind of open-ended fee-setting authority on the primary ticket market. By standing alone in this approach, the District risks making itself a less predictable place to book shows, leading artists and promoters to choose nearby jurisdictions with consistent, established rules. That would not reduce costs for fans — it would reduce the number of live events available in Washington, DC.

Removing subsection (b) eliminates that uncertainty. It ensures DC's regulatory environment is consistent with every other major market and preserves the city's competitiveness in attracting artists, tours, and promoters.

If you have any questions, please contact Esther Bundens, Senior Legislative Assistant, at ebundens@dccouncil.gov.

# COUNCIL OF THE DISTRICT OF COLUMBIA
## Office of the Budget Director
## Fiscal Impact Statement

**Jennifer Budoff – Budget Director**

**LEGISLATIVE MEETING:**
July 14, 2026

**SHORT TITLE:**
Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2026

**TYPE:**
Amendment
*Circulated: 7/13/26 at 12:37pm*

**REQUESTING MEMBER:**
Councilmember Brooke Pinto

**FISCAL IMPACT:**
Funds are sufficient

www.dccouncil.gov
www.dccouncilbudget.com

## Conclusion

This amendment will not change the implementation costs of the underlying legislation,[1] which the Council fully funded in the approved Fiscal Year 2026 Revised Local Budget Adjustment Emergency Act of 2026 and the Fiscal Year 2027 budget and financial plan.

## Background

The underlying legislation creates a new regulatory framework for the sale and resale of live event tickets. Provisions include ticket price disclosure requirements, prohibitions on the sale of speculative tickets, limitations on bulk and automated purchases of live event tickets, licensing and bonding requirements for secondary ticket exchanges, regulatory authority for the District to cap ticket resale prices, and civil infraction provisions.

The engrossed version of the legislation allows the Mayor to promulgate rules governing the maximum service fees allowable for the issuance or sale of an initial event ticket.

This amendment strikes that regulatory authority.

This fiscal impact of this amendment can be absorbed by the funding for the underlying legislation provided in the approved Fiscal Year 2026 Revised Local Budget Adjustment Emergency Act of 2026 and the Fiscal Year 2027 budget and financial plan.

---

[1] Office of the Chief Financial Officer, Fiscal Impact Statement – Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2026 (June 18, 2026).

OFFICE OF THE GENERAL COUNSEL
Council of the District of Columbia
1350 Pennsylvania Avenue NW, Suite 4
Washington, DC 20004
(202) 724-8026

**MEMORANDUM**

**TO:** **Councilmember Brooke Pinto**

**FROM:** **Nicole L. Streeter, General Counsel** *NLS*

**DATE:** **July 13, 2026**

**RE:** **Legal sufficiency determination for Amendment to Bill 26-224, the Restricting Egregious Scalping Against Live Entertainment (RESALE) Amendment Act of 2026**

The amendment is legally and technically sufficient for Council consideration.

This amendment would strike amended section 28-5507(b) within section 2(b), which would have authorized the Mayor to regulate ticket fees in the primary market.

I am available if you have any questions.